# United States Bankruptcy Court
## For The District of Puerto Rico

IN RE:
**JUAN AMBROSIO LAMEIRO AGUAYO**            Case No. 14-03825-EAG11
**SONIA CARO ESTERAS**
**Debtor**                                                                **CHAPTER 11**
*****************************************    Small Business Case

**JUAN AMBROSIO LAMEIRO AGUAYO & SONIA CARO ESTERAS'
SECOND AMENDED DISCLOSURE STATEMENT, DATED MARCH 30, 2015**

**Table of Contents**

I. INTRODUCTION………………………………………………………………………3
   A. Purpose of This Document
   B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
      1. Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan
      2. Deadline For Voting to Accept or Reject the Plan…………………..4
      3. Deadline For Objecting to the Adequacy of Disclosure and Confirmation of The Plan
      4. Identity of Person to Contact for More Information
   C. Disclaimer

II. BACKGROUND
   A. Description and History of the Debtor's Business
   B. Insiders of the Debtor……………………………………………………………..5
   C. Management of the Debtor Before and During Bankruptcy
   D. Events Leading to Chapter 11 Filing
   E. Significant Events During the Bankruptcy Case
   F. Projected Recovery of Avoidable Transfers…………………………………..6
   G. Claims Objections
   H. Current and Historical Financial Conditions

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS
   A. What is the Purpose of the Plan of Reorganization?
   B. Unclassified Claims
      1. Administrative Expenses
      2. Priority Tax Claims………………………………………………………7
   C. Classes of Claims and Equity Interests……………………………………..8
      1. Classes of Secured Claims
      2. Class of Priority Unsecured Claims, Class 2………………………….9
      3. Class of General Unsecured Claims……………………………………10
      4. Class of Equity Interest Holders……………………………………..12

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 2

    D.  **Means of Implementing the Plan**
        1.  Source of Payments
        2.  Post-Confirmation Management
    E.  **Risk Factors**
    F.  **Executory Contracts and Unexpired Leases**
    G.  **Tax Consequences of Plan**…………………………………………..……….13

**IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES**
    A.  **Who may Vote or Object**
        1.  What is an Allowed Claim or an Allowed Equity Interest?
        2.  What is an Impaired Claim or Impaired Equity Interest?............14
        3.  Who is Not Entitled to Vote
        4.  Who Can Vote in More Than One Class
    B.  **Votes Necessary to Confirm the Plan**……………………………………..…15
        1.  Votes Necessary for a Class to Accept the Plan
        2.  Treatment of Non-accepting Classes
    C.  **Liquidation Analysis**
    D.  **Feasibility**
        1.  **Ability to Initially Fund Plan**……………………………………16
        2.  **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

**V.  EFFECT OF CONFIRMATION OF PLAN**

    A.  **Discharge of Debtor**
    B.  **Modification Of Plan**
    C.  **Final Decree**

**B25B (Official Form 25B) (12/08) – Cont.**
**Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras**
**Case No. 14-03825-EAG-11**
**Second Amended Disclosure Statement**
**Page 3**

I. **INTRODUCTION**

This is the second amended disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras, hereinafter "the Debtor". This Disclosure Statement contains information about the Debtor and describes the Reorganization Plan filed by the Debtor on March 30, 2015. A full copy of the Second Amended Plan (the "Plan") is attached to this Disclosure Statement as Exhibit A and an additional copy of the Plan has been filed in separate legal docket too. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed in this Disclosure Statement. General unsecured creditors are classified in Class 3.~~1, 3.2 and 3.3~~, and will receive a distribution of 0.00% of their allowed claims.

A. **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e*., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B. **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing on May 7, 2015 at 9:30 a.m., the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan ~~will be scheduled by the Court~~. This hearing will be conducted at the United States Bankruptcy Court for the District of Puerto Rico, Sowthwestern Divisional Office, MCS Building, Second Floor, 880 Tito Castro Avenue, Ponce, Puerto Rico.

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 4

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot to the following address: Angel Miguel Román Ongay, Esq., B-45 Ext. La Concepción, Cabo Rojo, PR 00623. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by April 23, 2015 or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon all creditors on or before the confirmation hearing.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Angel Miguel Román Ongay, Esq., B-45 Ext. La Concepción, Cabo Rojo, PR 00623. Tels. 787-265-8270, 787-851-5872, Mobile 787-519-3326 or by electronic mail: mitchroman@hotmail.com.

C. **Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until the date of the confirmation hearing.*

II. **BACKGROUND**

A. **Description and History of the Debtor's Business**

The Debtor is in the health care business. The debtor is Doctor Juan Ambrosio Lameiro Aguayo, ("Dr. Lameiro") a licensed medical practitioner specializing in neurosurgery since the year 1988. The Joint Debtor is debtor's spouse, Sonia Caro Esteras, who is a homemaker but also the administrative assistant of the debtor, Dr. Lameiro.

The debtors have a health clinic opened to the public located at #4B, Tetuan Street, San Germán, Puerto Rico. Dr. Lameiro also offers services at Hospital La Concepción in San Germán, Puerto Rico.

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 5

B. **Insiders of the Debtor**

The debtor, Dr. Lameiro, is an individual and the only person who could be considered an insider is his spouse, Sonia Caro Esteras, who is the joint debtor in this case. Sonia Caro Esteras does not receive any direct compensation for being a homemaker and administrative assistant for Dr. Lameiro.

C. **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, Dr. Lameiro and his spouse, Sonia Caro Esteras, have been their own managers of all their finances and they will continue to do so during the Debtors' chapter 11 case.

After the effective date of the order confirming the Plan, management of the business will remain unchanged.

D. **Events Leading to Chapter 11 Filing**

The main reason that triggered the filing of this bankruptcy petition was the foreclosure of debtors' real property due to a debt with Banco Popular de Puerto Rico, where debtors' residence and vacation apartment were at stake. Also, claims by "Departamento de Hacienda de Puerto Rico" and the Internal Revenue Service have been exponentially growing due to several circumstances which included, lower income from the failure of payment from health insurance companies and problems in tax return filings, among others.

E. **Significant Events During the Bankruptcy Case**

On May 12, 2014, Debtors filed the present case Bankruptcy Petition.

On June 2, 2014, Debtors filed the application to employ attorney Angel Miguel Román Ongay as debtor's counselor and this application was approved by the Court on July 3, 2014.

On June 13, 2014 the meeting of creditors under 11 U.S.C. §341 was held and closed.

Upon filing of this bankruptcy petition, the debtors have taken all possible measures necessary to reorganize their business or professional affairs and are trying to comply with the U.S. Trustee Office Operating Guidelines. Monthly Operating Reports have been completed and filed with the Court up to <u>January 2015</u>. Public liability insurance has been maintained. Post-petition expenses are being paid in the ordinary course of business. Post-petition taxes are being paid as these become due. Quarterly fees required by the U.S. Trustee will be promptly paid.

On September 18, 2014, Debtors filed an application to employ CPA Samuel Vargas as accountant for the debtor's bankruptcy estate which ~~is now pending approval by the Court~~ <u>which was approved on February 2, 2015</u>.

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 6

### F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions because such transfers are non-existent.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B. Real Properties have been professionally appraised.

The Debtor's most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

The most recently filed Debtors' post-petition periodic operating report is set forth in Exhibit D.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before

Case:14-03825-EAG11 Doc#:81 Filed:03/30/15 Entered:03/30/15 08:12:04 Desc: Main
Document Page 7 of 18

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 7

the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $20,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Paid in full as they become due. |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $1,628.28 | Paid in full as they become due. |
| TOTAL | $21,628.28 | |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| **Description (name and type of tax)** | **Estimated Amount Owed** | **Date of Assessment** | **Treatment** |
|---|---|---|---|
| Internal Revenue Service Claim #4 as amended. Priority Portion | $87,981.00 | 2009-2013 | Pmt interval = each month<br>Monthly payment = $1,345.00<br>Begin date = Jun 2015<br>End date = May 2021<br>Interest Rate % = 3.25%<br>Total Payout Amount = $96,840.00<br>100% + 3.25% interest per annum.<br>Unless an agreement is reached. |
| Dept. of Treasury Claim #11 Priority Portion | $90,850.48 | 2009-2013 | Pmt interval = each month<br>Monthly payment = $1,391.00<br>Begin date = Jun 2015 |

Case:14-03825-EAG11 Doc#:81 Filed:03/30/15 Entered:03/30/15 08:12:04 Desc: Main
Document Page 8 of 18

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 8

|  |  |  | End date = May 2021<br>Interest Rate % = 3.25%<br>Total Payout Amount = $100,152.00<br>100% + 3.25% interest per annum.<br>Unless an agreement is reached. |
|---|---|---|---|
|  |  |  |  |

### C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider?<br>(Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| Class 1.1 | *Secured claim of*:<br>**Banco Popular de PR**<br>Claim #6<br>Collateral description = House in Vista Verde, Mayagüez, PR, <u>with Mortgage Note of $225,000.00</u>; and Apt. in Villa Taína, Cabo Rojo, PR, <u>with Mortgage Notes of $60,000.00; $100,000.00 and $25,000.00.</u><br>Allowed Secured Amount = $335,000.00.<br>Unsecured Portion= Class 3  $226,661.56.<br> Priority of lien = Mortgage Loan.<br><br>Total claim =<br>**$561,661.56** | NO | Impaired | Debtors' agree the Lift of Stay for this claim in favor of Banco Popular de Puerto Rico. |

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 9

| | | | | |
|---|---|---|---|---|
| Class 1.1 | *Secured claim of*: **CRIM** Claim #5  Collateral description = House in Vista Verde, Mayagüez, PR, or Tanamá, Arecibo.  Allowed Secured Amount = $13,253.12  Unsecured Portion= Class 3 $4,338.98  Priority of lien = Real Property Taxes  Total claim = $17,592.10 | NO | Impaired | Debtors' agree the Lift of Stay for this claim. |
| Class 1.1 | *Secured claim of:* **Coop A/C Mayagüez** Claim #9  Total claim= $11,305.20  Collateral= Shares $1,550.50  Unsecured portion= $9,754.70  Class 3 | NO | Impaired | Debtors' agree the Lift of Stay for this claim. |
| Class 1.2 | *Secured Claim of:* **Banco Popular de PR** Claim #10 Collateral description= Apartment Isleta Marina Allowed secured amount= $10,776.46 Priority of Lien= Mortgage, Escrow debt. | NO | Unimpaired | Creditor will be Paid Directly until paid off. |

2. *Class of Priority Unsecured Claims, Class 2.*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 10

holders of such claims may vote to accept different treatment of the Code and their proposed treatment under the Plan:

| State Insurance Fund Claim #7 Priority Portion Convenience Class 2.1 | Amount= $440.35 | Date= 2008,2012 | One payment in full on effective date. Date= June 2015 Total Payout = 100% |
|---|---|---|---|
| Municipio de San German Claim #12 Class 2.2 | Amount= $7,646.00 | Date= 2011-2015 | Pmt interval= $162.69 each month for 47 months. Begin date= Jun 2015 End date = Apr 2019 Total Payout= 100% |

3. *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. Under 11 U.S.C. §1122(b) convenience classes have been established. Class 3.1, 3.2 and Class 3.3. Review of the liquidation value analysis shows a liquidation value of zero towards Class 3 general unsecured claims.

The following chart identifies the Plan's proposed treatment of Classes 3.1 through 3.3, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 3 General Unsecured Claims | State Insurance Fund Claim #7 Unsec. Portion $350.38 | Impaired | Class 3 claimant will not receive any cash dividend throughout this plan. |
| Class 3 | American Express, TRS Co., Inc. Claim #8 $8,380.91 | Impaired | |
| Class 3 | Banco Popular de PR Claim #3 $9,291.25 | Impaired | |

**B25B (Official Form 25B) (12/08) – Cont.**
**Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras**
**Case No. 14-03825-EAG-11**
**Second Amended Disclosure Statement**
**Page 11**

| | | | |
|---|---|---|---|
| Class 3 | PR Acquisitions Claim #1 $4,453.11 | Impaired | |
| Class 3 | Coop A/C Mayagüez Claim #9 $9,754.70 | Impaired | |
| Class 3 | Banco Santander de PR Claim #2 $20,663.29 | Impaired | |
| Class 3 | Department of Treasury "Hacienda" Claim #11 $144,234.79 | Impaired | |
| Class 3 | Banco Popular de PR Claim #6 Unsec. Portion $226,661.56 | Impaired | |
| Class 3 | Internal Revenue Service Claim #4 Unsec. Portion $81,510.15 | Impaired | |
| <u>Class 3</u> | <u>CRIM</u> <u>Claim #5 Unsec. Portion $4,338.98</u> | <u>Impaired</u> | |
| | | | |
| <u>Class 3 Total</u> | <u>$509,639.12</u> | | |

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 12

4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders: There may be more than one class of equity interests in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 4 | Equity interest holders. The debtors. | Impaired, will not receive any cash dividend | Will not receive any cash dividend throughout this plan. |

D. **Means of Implementing the Plan**

1. *Source of Payments*

The Plan will be implemented as required by the Bankruptcy Code. Payments and distributions under the Plan will be funded by the daily operations of the health care business.

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, will continue to be the Debtor, Dr. Lameiro, and the Joint Debtor, Sonia Caro Esteras.

E. **Risk Factors**

The proposed Plan has the following risks:

The debtor's future physical health is a possible risk in the debtor's ability for the compliance of all proposed payments or distributions required under the Plan.

F. **Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults. There are no defaults on the unexpired lease in this case.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 13

objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in the Plan will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G. **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that any class if unimpaired and that any holders of claims in any of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest,

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 14

unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was September 11, 2014 .***

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:
- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 15

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

#### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

#### 2. *Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly", and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**B25B (Official Form 25B) (12/08) – Cont.**
**Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras**
**Case No. 14-03825-EAG-11**
**Second Amended Disclosure Statement**
**Page 16**

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $75,000.00. The final Plan payment is expected to be paid on the year 2021.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V. **EFFECT OF CONFIRMATION OF PLAN**

  A. **DISCHARGE OF DEBTOR**

Discharge. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

  B. **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

  C. **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

B25B (Official Form 25B) (12/08) – Cont.
Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras
Case No. 14-03825-EAG-11
Second Amended Disclosure Statement
Page 17

S/ <u>JUAN AMBROSIO LAMEIRO AGUAYO</u>

S/ <u>SONIA CARO ESTERAS</u>

Debtors In Possession
P.O. Box 6723
MAYAGUEZ PR 00682
TEL: 787-224-1521
E-mail: sonia.e.caro@gmail.com


S/ <u>ANGEL MIGUEL ROMAN ONGAY</u>

ANGEL MIGUEL ROMAN ONGAY, ESQ.
Attorney for Debtors
USDC 212202
B-45 EXT LA CONCEPCION
CABO ROJO PR 00623
TEL: 787-265-8270
E-mail: mitchroman@hotmail.com

**B25B (Official Form 25B) (12/08) – Cont.**
**Juan Ambrosio Lameiro Aguayo & Sonia Caro Esteras**
**Case No. 14-03825-EAG-11**
**Second Amended Disclosure Statement**
**Page 18**

# EXHIBITS

**Exhibit A** - Copy of Proposed Second Amended Plan of Reorganization

**Exhibit B** - Identity and Value of Material Assets of Debtor

**Exhibit C** -  Prepetition Financial Statements

**Exhibit D** - Most Recently Filed Postpetition Operating Report

**Exhibit E** – Amended Liquidation Analysis

**Exhibit F** – Plan's Payment Schedule